UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES EDWARD GLEASON,

        Petitioner,        Case Number: 01-10316-BC
                                  Honorable David M. Lawson

v.

JOHN CASON,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, James Edward Gleason, a state inmate currently incarcerated at the Mound Correctional Facility in Detroit Michigan, has filed *pro se* a petition for a writ of habeas corpus through counsel pursuant to 28 U.S.C. § 2254. He challenges his 1998 convictions for possession with intent to deliver between 50 and 225 grams of cocaine (second offense), Mich. Comp. Laws § 333.7401(2)(a)(iii) (1997), possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b ("felony firearm"), and felon in possession of a firearm, Mich. Comp. Laws § 750.224f. The petitioner was sentenced to a prison term of natural life without parole for the drug possession, two to five years for being a felon in possession of a firearm, and two years for felony firearm. He asserts that his convictions are unconstitutional because the search warrant that uncovered the drugs and guns failed to establish probable cause; he was entrapped; certain evidence and testimony was improperly admitted; insufficient evidence was presented to support the firearm convictions; and his sentence violated the Eighth Amendment. The respondent contends that the petitioner's stated grounds for relief are without merit. The Court finds that the petitioner has failed to establish that he is entitled to habeas corpus relief. Therefore, the petition will be denied.

I.

The petitioner's convictions arise from a search of his mother's home during which police officers found several packets of cocaine and a handgun. A jury trial was conducted in the Oakland County, Michigan Circuit Court in August 1998.

The trial evidence revealed that police officers executed a search warrant at 546 Granada Street in Pontiac, Michigan on November 13, 1996. Officer Ronald Kohlman testified at trial that he searched the bedroom in the basement of the house. He found a plastic bag containing a chip of crack cocaine on the nightstand, a few more chips of crack cocaine and a loaded .380 semi-automatic pistol in the top drawer of the nightstand, a loaded .357 Magnum revolver and ammunition in the bottom drawer of the nightstand, and a Dixie cup with crack cocaine residue on a window sill. Between the mattress and box spring of the bed, Officer Kohlman found a vehicle title and correspondence from the Michigan Department of Corrections, all of which bore the petitioner's name and the address of 546 Granada Street. A closet in the basement contained only men's clothing, including men's shoes that were the same size as those worn by the petitioner. Officer Kohlman found an electronic scale in the closet, which was the same type of scale commonly found in drug houses. Officer Kohlman also found five individually wrapped packets of powder cocaine in a shoebox in the closet. Another officer seized $2,500 and a credit card in the petitioner's name from a jewelry box on the dresser in the bedroom. Fingerprints found on one of the seized bags of cocaine and one of the seized handguns matched the petitioner's fingerprints.

The petitioner did not testify at trial. On August 10, 1998, the jury found him guilty of one count of possession with intent to deliver between 50 and 225 grams of cocaine, one count of possession of a firearm in the commission of a felony, and one count of being a felon in possession

of a firearm. In September of 1998, the petitioner was sentenced to life imprisonment for the drug conviction, two years imprisonment for the felony firearm conviction, and two to five years imprisonment for the felon in possession of a firearm conviction.

The petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals in December 1999, presenting the following claims:

    I.       The affidavit in support of the search warrant fails to establish probable cause for the search, Defendant was denied his Fourth Amendment right prohibiting unreasonable search and seizure, the evidence was inadmissible, and his conviction must be reversed.

    II.      All charges must be dismissed as defendant was entrapped as a matter of law.

    III.     Defendant was denied a fair trial by the admission, over objection, of fingerprint identification testimony.

    IV.     Defendant was denied a fair trial by the testimony of a police officer as an expert that defendant intended to deliver the cocaine [that] was seized from his mother's home.

    V.       The trial court did not have jurisdiction to try this case, and the conviction must be reversed.

    VI.     The sentence of mandatory life in prison for possession with intent to deliver between 50 and 225 grams of cocaine as a second offense is cruel and unusual.

    VII.    Defendant's convictions of felony firearm and felon in possession of a firearm must be vacated as there was insufficient evidence of possession of a firearm.

The Michigan Court of Appeals denied the application for delayed appeal "for lack of merit in the grounds presented." *People v. Gleason*, No. 224047 (Mich. Ct. App. May 5, 2000).

The petitioner then filed an application for leave to appeal with the Michigan Supreme Court, presenting essentially the same claims presented to the Michigan Court of Appeals. The petitioner added a due process argument to his entrapment claim, which is considered exhausted pursuant to *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990). The Michigan Supreme Court denied

leave to appeal "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Gleason*, No. 116957 (Mich. Dec. 5, 2000).

Thereafter, the petitioner filed his petition for a writ of habeas corpus presenting the same claims to this Court that were presented on direct review in state court, with the exception of the claim regarding jurisdiction (issue V), which is not before this Court.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> 
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's

-4-

application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case."  *Id.* at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

However, because the state appellate courts in this case issued one-sentence form orders denying the petitioner's appeals, this Court has no reasoned decision or explanation from the state courts for rejecting the petitioner's claims. Where a state court declines to address the merits of a properly raised issue, this Court conducts an independent review of the issue. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The deferential standard of review prescribed by the AEDPA does not apply because "[t]his statute by its own terms is applicable only to habeas claims that were adjudicated on the merits in State court. . . . Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition . . . questions of law and mixed questions of law and fact [are reviewed] *de novo*." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). This Court's review of the issues raised by the petitioner is "not circumscribed by a state court conclusion" because none of the state courts issued a reasoned opinion on these issues. *Wiggins v. Smith*, 539 U.S. 510 (2003); *see also Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005).

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

A.

In his first claim for habeas corpus relief, the petitioner argues that the trial court erred in denying his motion to suppress evidence seized pursuant to the search warrant. The petitioner argues that probable cause was not established to support the issuance of a search warrant. After the trial court conducted an evidentiary hearing regarding the petitioner's motion to suppress, the court denied the motion.

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). A state criminal defendant has a full and fair opportunity to litigate his Fourth Amendment claim when (1) the state's procedural mechanism allows the opportunity to present a Fourth Amendment claim; and (2) the defendant's presentation of his claim was not "in fact frustrated because of a failure of that mechanism." *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). "All that *Stone v. Powell* requires is an 'opportunity' for full and fair consideration of the claim for suppression; it is up to the claimant and his counsel to decide what use, if any, is to be made of the opportunity." *Jennings v. Rees*, 800 F.2d 72, 77 (6th Cir. 1986).

In this case, the petitioner does not dispute that the Michigan courts provided him with a procedural mechanism to present his Fourth Amendment claim; he simply argues that the matter was incorrectly decided. The petitioner acknowledges that he filed a motion to suppress the evidence seized in the search and the trial court held a hearing on the matter. The petitioner was provided

with a full and fair opportunity to litigate his Fourth Amendment claim in state court. Therefore, his claim is not cognizable on habeas corpus review.

B.

The petitioner claims that he was entrapped when the police enlisted his friend and co-worker Marvin Smith to serve as an informant. In Michigan, the defense of entrapment is decided by the judge, not the jury, *People v. D'Angelo*, 401 Mich. 167, 173-76, 257 N.W.2d 655, 658-59 (1977), and so the petitioner sought and received a pretrial entrapment hearing. At the hearing, Smith testified that he contacted the petitioner several times asking for drugs. Although the petitioner initially told Smith that he could not secure the quantity of drugs Smith wanted, Smith continued to call the petitioner and the petitioner eventually obtained the drugs for Smith. Most, but not all, of the communications between the petitioner and Smith were monitored by police.

According to the parties' briefs in this case, the petitioner testified at the hearing that he lent Smith one thousand dollars, which Smith had not yet repaid. According to the petitioner, Smith explained that he needed drugs for his uncle and asked the petitioner if he could obtain the drugs. The petitioner testified that he refused Smith's requests at least six or seven times. Finally, Smith told the petitioner that he would not be able to repay the borrowed money unless the petitioner secured the drugs because Smith planned to make the money from selling drugs. The petitioner ultimately agreed to get the drugs for Smith so that Smith could repay the money.

At the end of the hearing, the trial court concluded that the petitioner had not been entrapped and denied the motion to dismiss. Even assuming that Smith told the petitioner that he could only repay the money if the petitioner got him the drugs, the court explained, the petitioner's selling the drugs so that he could be repaid is no different than selling the drugs for a profit. The court found

that the actions of the police were not impermissible actions that would induce an otherwise law-abiding person to commit a crime in similar circumstances; furthermore, the police did not engage in conduct so reprehensible that it cannot be tolerated in a civilized society. *See People v. Johnson*, 466 Mich. 491, 498, 647 N.W.2d 480, 485 (2002) (explaining the two prongs of the entrapment defense in Michigan).

The Supreme Court has declined to find a constitutional basis for the entrapment defense. *United States v. Russell*, 411 U.S. 423, 430 (1973). However, the Court in *Russell* did allow for the possibility that an egregious instance of entrapment could violate the standards of due process:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed. . . . The law enforcement conduct here stops far short of violating that "fundamental fairness, shocking to the universal sense of justice," mandated by the Due Process Clause of the Fifth Amendment.

*Russell*, 411 U.S. at 431-32 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960) (internal citations omitted). Neither the Supreme Court nor the Sixth Circuit have ever found a violation of due process rights in a case of entrapment. The Sixth Circuit addressed entrapment in the habeas context in *Sosa v. Jones*, 389 F.3d 644 (6th Cir. 2004). In *Sosa*, a habeas petitioner argued that his right to due process was violated when law enforcement authorities repeatedly sent an agent to buy drugs from him, eventually requesting a large quantity of drugs and pressuring him through his co-conspirator until the petitioner sold a quantity of drugs sufficient to charge him with an offense carrying a mandatory sentence of life without the possibility of parole. *Sosa*, 389 F.3d at 645. That court reasoned, "[e]ven assuming the 'due process' defense is clearly established Supreme Court precedent, which does not appear to be the case, the Michigan Court of Appeals

reasonably concluded the behavior of the police did not fall within the narrow class of cases contemplated by *Russell*." *Id* at 649.

In this case, the petitioner has failed to show that the conduct of the authorities was so outrageous or fundamentally unfair that it would violate his right to due process. The trial court, in fact, applied a similar standard when it evaluates the petitioner's claim under the second prong of Michigan's entrapment test: whether law enforcement engaged in conduct so reprehensible that it cannot be tolerated in a civilized society. The trial court rightly observed that the police in this case did nothing outrageous. Furthermore, even if Smith told the petitioner that he would only repay him if he got the drugs, the petitioner was simply faced with the possibility that he would not be repaid a loan. The possibility that the petitioner would not be repaid is a possibility that he would have faced regardless of the circumstances. The petitioner thus has failed to show that his due process rights were violated.

Accordingly, the petitioner's entrapment claim does not entitle him to habeas relief.

C.

The petitioner next claims that he is entitled to habeas corpus relief because the trial court erred in the admission of certain evidence. First, the petitioner claims that the trial court should have excluded testimony from a police officer, qualified as an expert in fingerprint identification, that the fingerprints lifted from one of the bags of cocaine and a gun matched those of the petitioner. Second, the petitioner claims that the trial court erred in admitting testimony from a police officer, qualified as an expert in drug trafficking, that the petitioner's house was a "safe house" used to store and package cocaine for distribution and that the petitioner intended to deliver the cocaine which was seized from his mother's home.

It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit Court of Appeals has explained:

> "[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967).

*Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) (quoted in *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005)).

The petitioner has failed to show that the trial court's decision to admit the foregoing expert testimony denied him his right to a fair trial. In addition, the Court notes that the petitioner's attorney cross-examined both witnesses effectively regarding the limitations of the experts' testimony. Accordingly, the petitioner is not entitled to habeas corpus relief with respect to this claim.

D.

The petitioner claims that his life sentence violates the Eighth Amendment ban on cruel and unusual punishment because it is grossly disproportionate.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eighth Amendment grounds faces a formidable task. Generally, he may obtain relief only by demonstrating

that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Ibid.* Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Ibid.* The Court concluded that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id*. at 73.

In *Lockyer*, the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-years-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment. The Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm*, 463 U.S. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980). The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel*, where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence. The California court concluded that Andrade's sentence was not disproportionate. The Supreme

Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer*, 538 U.S. at 72-77.

In this case, however, the Court conducts its independent review of the issue absent the restrictions that the "contrary to or unreasonable application" standard may impose. *See Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004). Nevertheless, it is still difficult to show that a lengthy prison sentence violates the Eighth Amendment.

A plurality of the Supreme Court has held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *See Harmelin*, 501 U.S. at 965. As the Supreme Court observed in *Lockyer*, it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell*, 268 F.3d 417, 453 (6th Cir. 2001) (citing *Coker v. Georgia*, 433 U.S. 584, 592 (1977)); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel*, 445 U.S. at 272. Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment. In *Harmelin*, the Supreme Court upheld a life sentence without the possibility of parole

imposed upon a Michigan defendant for possession of more than 650 grams of cocaine for an offender with no prior felony convictions. The petitioner here was similarly sentenced for nearly the same crime, having a more substantial criminal record.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment. However, Helm had been sentenced to life imprisonment without the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes. By contrast, the Supreme Court recently reaffirmed *Rummel* and found constitutional a sentence of twenty-five years to life imposed upon a fifth felony conviction. *See Ewing v. California*, 538 U.S. 11, 24-31 (2003).

In this case, the Court does not believe that the petitioner's sentence of life without the possibility of parole for a second offense of possession with intent to deliver between 50 and 225 grams of cocaine violated the Eighth Amendment. Michigan law mandated a prison term of life without the possibility of parole for this offense. Mich. Comp. Laws §§ 333.7401(2)(a)(iii), 333.7413(1) (1997). The challenged sentence was the sentence set by state law, and "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (citation omitted) (quoted with approval in *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin*, 213 F.3d at 301 (quoting *Williams*, 337 U.S. at 245). Accordingly, given the nature of the offense and the fact that the petitioner was sentenced within the state sentencing guidelines, this Court finds that the

petitioner's sentence does not offend the Eighth Amendment therefore and he is not entitled to habeas corpus relief with respect to this claim.

E.

Finally, the petitioner claims that he is entitled to habeas corpus relief because insufficient evidence was presented at trial to support his gun-related convictions. Specifically, the petitioner argues that the prosecution failed to establish the possession element of felony-firearm or felon in possession of a firearm.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

Under Michigan law, possession of a firearm "requires proximity and reasonable accessibility." *People v. Burgenmeyer*, 461 Mich. 431, 437, 606 N.W.2d 645, 648 (2000). Possession includes both actual and constructive possession. *Id.* at 438. "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably

accessible to the defendant. Physical possession is not necessary as long as the defendant has constructive possession." *Id.* (quoting *People v. Hill*, 433 Mich. 464, 470-71, 446 N.W.2d 140 (1989)). To determine whether the element of possession has been satisfied, the judge or jury considers "whether the defendant possessed a firearm *at the time he committed a felony*. The fact that the defendant did not possess a firearm at the time of arrest, or at the time of the police raid, is not relevant . . ." *Id.* at 438-39.

The evidence, viewed in a light most favorable to the prosecution, shows that the police found drugs, packaged in a way that indicated an intent to sell; drug paraphernalia; and guns, in a bedroom where police also found the petitioner's personal property, including clothing, drivers licenses, and the title to a car. A rational trier of fact could have found that these facts proved that the petitioner had possession of these weapons at the time he committed the crime of possession with intent to deliver cocaine. Accordingly, the petitioner is not entitled to habeas corpus relief with respect to his claims of insufficient evidence.

### III.

The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: February 23, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 23, 2006.

                                          s/Tracy A. Jacobs
                                          TRACY A. JACOBS